## UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| THE GLOVE SOURCE, INC., |
|                              Plaintiff, |
|                              v. |
| U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, Secretary of the Treasury; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary of the Department of Homeland Security; OFFICE OF UNITED STATES TRADE REPRESENTATIVE; JAMIESON GREER, U.S. Trade Representative; U.S. CUSTOMS & BORDER PROTECTION; RODNEY SCOTT, U.S. Customs & Border Protection Commissioner; UNITED STATES OF AMERICA; U.S. DEPARTMENT OF COMMERCE; HOWARD LUTNICK, Secretary of Commerce, |
|                              Defendants. |

Court No. 1:26-cv-312

## COMPLAINT

Plaintiff The Glove Source, Inc. ("Glove Source"), by and through its attorneys, alleges and states as follows:

1.      This action concerns Defendants' initiation and administration of unprecedented and unlawful trade measures that have, to date, resulted in the collection of more than $200 billion in tariffs on imports from nearly all countries.

2.      This Complaint focuses on Defendants' unlawful imposition of tariffs ("IEEPA Duties") founded on President Trump's executive orders invoking the International Emergency Economic Powers Act of 1977, 50 U.S.C. § 1701 et seq., ("IEEPA") to justify same. Those executive orders (the "Executive Orders") include:

1

i.      Exec. Order No. 14195 — *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 1, 2025) (the "China Tariff EO");

ii.     Exec. Order No. 14200 — *Amendment to Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025) (the "Amended China Tariff EO");

iii.    Exec. Order No. 14228 — *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11463 (Feb. 11, 2025) (the "Second Amended China Tariff EO").

iv.     Exec. Order No. 14257 — *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (April 2, 2025) (the "Liberation Day Tariffs EO").

v.      Exec. Order No. 14259 — *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (April 14, 2025) (the "Amended Liberation Day Tariffs EO");

vi.     Exec. Order No. 14266 — *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625 (April 9, 2025) (the "Second Amended Liberation Day Tariffs EO");

3.      Defendants have imposed adjusted and expanded coverage of IEEPA Duties under these Executive Orders via executive actions and administrative directives.

4.      Plaintiff imports goods from the countries impacted by the IEEPA Duties ("Impacted Countries") and has paid the IEEPA Duties on same.

5.      The IEEPA does not authorize or otherwise provide justification for the imposition of the IEEPA Duties. Both this Court and the Federal Circuit have issued rulings confirming same. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir.), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

6.      Plaintiff asks that this Court issue a holding consistent with the Federal Circuit and its own rulings in *V.O.S. Selections*, and find that the IEEPA Duties executed by Defendants and imposed on Plaintiff, along with all supporting Executive Orders, are unlawful, enjoin Defendants

from engaging in any effort to collect IEEPA Duties from Plaintiff, order the prompt refund, with interest, of any IEEPA duties paid by Plaintiff regardless of liquidation status, and provide any and all remedies that the Court deems appropriate.

## JURISDICTION

7.      The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B) and (D), which confer "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" and over the "administration and enforcement with respect to matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)–(h) of this section." *See also V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

8.      The Court thus has all the same powers in equity and law under United States District Court, 28 U.S.C. § 1585, including to enter a monetary award, declaratory judgments, injunctions, and any other appropriate civil remedies. 28 U.S.C. §§ 2643(a)(1), (c)(1).

## PARTIES

9.      Glove Source, located in Columbia, Maryland, is engaged in the commercial sale and distribution of sport, fashion, cold-weather, and other categories of handwear and apparel, serving both retail and wholesale customers. Plaintiff directly employs approximately 14 employees in the United States and indirectly supports numerous U.S. jobs through its network of suppliers and customers. Plaintiff is a U.S. importer of record and regularly imports goods into the United States that are subject to IEEPA Duties. Specifically, Plaintiff primarily imports goods

from China that are subject to IEEPA Duties imposed pursuant to the China Tariff EO and the Liberation Day Tariffs EO.

10. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

11. The Office of the USTR, headquartered in Washington, D.C., is an executive agency of the United States charged with implementing tariffs directed by the Executive Orders.

12. Jamieson Greer is the U.S. Trade Representative, in which he oversees USTR's implementation of the tariffs directed by the Executive Orders.

13. Defendant U.S. Customs & Border Protection ("CBP"), headquartered in Washington, D.C., is the agency that collects tariffs and duties on imports, including IEEPA Duties.

14. Defendant Rodney Scott is Commissioner of CBP. In this capacity, he oversees CBP's collection of IEEPA Duties.

15. Defendant U.S. Department of Homeland Security, headquartered in Washington, D.C., is responsible for implementing and enforcing the Executive Orders including through its component CBP.

16. Defendant Kristi Noem, Secretary of the Department of Homeland Security, is responsible for implementing and enforcing the Executive Orders on behalf of the U.S. Department of Homeland Security, including through its component CBP.

17. Defendant U.S. Department of the Treasury, headquartered in Washington, D.C., is responsible for consulting with the Department of Homeland Security and other agencies on the legal authority for and financial implementation of the Executive Orders.

4

18.    Defendant Scott Bessent, Secretary of the Treasury, is responsible for consulting with the Department of Homeland Security and other agencies on the legal authority for and financial implementation of the Executive Orders on behalf of the Treasury.

19.    Defendant U.S. Department of Commerce, headquartered in Washington, D.C., is responsible for taking action in support of economic restrictions issued under national emergency actions and coordinating with agencies in relation to national emergency actions, including the IEEPA Tariffs.

20.    Howard Lutnick, Secretary of Commerce, is responsible for taking action in support of economic restrictions issued under national emergency actions and coordinating with agencies in relation to national emergency actions, including the IEEPA Tariffs on behalf of the U.S. Department of Commerce.

**STANDING**

21.    Plaintiff has standing to sue because it is the importer of record for goods subject to IEEPA Duties. Plaintiff is thus responsible for paying the IEEPA Duties on those goods and has made such payments. As a result, Plaintiff has suffered injury caused by the IEEPA Duties. If not remedied, absent a ruling from this Court consistent with Slip Op. 25-154 in *AGS Company Automotive Solutions, et al., v. United States*, No. 25-00255 (holding the government judicially estopped from arguing that liquidation prevents the Court from ordering refunds in a pending matter), Plaintiff will suffer imminent and irreparable harm for the entries it has paid that have already been liquidated and those that will continue to liquidate as long as the IEEPA Duties are imposed.

**TIMELINESS OF THE ACTION**

22.    A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

23.    The instant action contests action taken by Defendants to establish the IEEPA Duties and impose same on Plaintiff. Plaintiff's claims accrued, at the earliest, on February 1, 2025 when the President issued the first of the Executive Orders. Plaintiff has therefore timely filed this action.

**BACKGROUND**

**I.    IEEPA Duties**

24.    Since February 1, 2025, President Trump has executed the unauthorized and unlawful Executive Orders, imposing tariffs on imports from a vast swath of countries to devastating effect on importers of record.

25.    On February 1, 2025, President Trump invoked the IEEPA to issue three (3) such executive orders imposing tariffs on goods imported from China, Canada, and Mexico (the China Tariff EO, Canada Tariff EO, and Mexico Tariff EO). President Trump justified these orders by asserting that there was a national emergency and asserted that the tariffs were authorized under IEEPA.[1]

26.    For the China Tariff EO, President Trump declared a national emergency based on purported entry of "illegal aliens" and "illicit drugs" and China's alleged failure to police drug and human traffickers and other crimes. During the first Trump Administration, the United States had

---

[1] Exec. Order No. 14193 – *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 1, 2025); Exec. Order No. 14194 — *Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 1, 2025); and Exec. Order No. 14195 — *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 1, 2025).

already imposed tariffs on certain goods imported from China pursuant to Section 301 of the Trade Act of 1974. In issuing the China Tariff EO, President Trump imposed an additional 10% *ad valorem* tariff on products imported from China, with certain exceptions.

27.    President Trump, via the Amended China Tariff EO, amended the China Tariff EO on February 5, 2025 to include an elimination of the *de minimis* exception pending the imposition of systems to process and collect tariffs even on goods that would previously have been eligible for the *de minimis* exception.[2]

28.    In March 2025, via the Second Amended China Tariff EO, President Trump again amended the China Tariff EO to further increase the tariffs on goods imported from China from 10% to 20% based on a purported failure of the Chinese government to address the influx of illicit drugs.[3]

29.    In early April 2025, President Trump declared that alleged trade deficits with United States trade partners were a national emergency justifying the imposition of further tariffs. President Trump issued the Liberation Day Tariffs EO, an executive order imposing a base 10% tariff on 57 countries. Under this EO, the tariffs imposed on imports from US trade partners ranged from approximately 10 to 50%.[4]

30.    Less than a week later, citing to alleged retaliatory tariffs issued by China on goods imported from the United States, President Trump issued the Amended Liberation Day Tariffs,

---

[2] Exec. Order No. 14200 — *Amendment to Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025).

[3] Exec. Order No. 14228 — *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11463 (Feb. 11, 2025).

[4] Exec. Order No. 14257 — *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (April 2, 2025).

amending the Liberation Day Tariffs EO to eliminate the *de minimis* exception on imports from China and impose additional tariffs.[5]  This EO resulted in an 84% *ad valorem* duty for goods of PRC origin with certain exceptions, along with other significant tariff increases.

31.    President Trump then promptly issued the Second Amended Liberation Day Tariffs EO, staying all tariffs imposed under the Liberation Day Tariffs EO and revising the Amended Liberation Tariffs EO to substantially increase the tariffs on goods imported from China from 84 to 125%.[6] However, in May 2025, President Trump reduced the China-specific tariff rate from 125% to 34% and paused the application of the higher country-specific tariff on imports from China until November 10, 2026.[7] During that time, a 10% tariff rate remains in effect.

32.    This Court received the first legal challenge to these tariffs on April 14, 2025 in the complaint filed in *V.O.S. Selections, Inc. v. Donald J. Trump.*  This Court held, and the Federal Circuit affirmed, that the tariffs imposed under the Executive Orders were not authorized by the IEEPA and were therefore unenforceable.

---

[5] Exec. Order No. 14259 — *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (April 14, 2025).

[6] Exec. Order No. 14266 — *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625 (April 9, 2025).

[7] Exec. Order No. 14298 — *Modifying Reciprocal Tariff Rates to Reflect Discussions with the People's Republic of China*, 90 Fed. Reg. 21831 (May 12, 2025); Exec. Order No. 14358 — *Modifying Reciprocal Tariff Rates Consistent with the Economic and Trade Arrangement Between the United States and the People's Republic of China*, 90 Fed. Reg. 50729 (November 4, 2025).

33.     President Trump has, regardless, continued to issue executive orders imposing tariffs on goods imported from other countries based on purported national emergencies and alleged authority provided under IEEPA.[8]

34.     Defendants have imposed the adjusted and expanded coverage of IEEPA Duties under these Executive Orders via executive action and administrative directives. 19 U.S.C. §§ 1500, 1502.

35.     Defendants assess and collect the IEEPA Duties and consult on same. 19 U.S.C. §§ 1500, 1502.

**II.     Enforcement of IEEPA Duties and Impact to Plaintiff**

36.     Despite this Court's findings regarding the legality of the IEEPA Duties, Defendants have enforced and continued to assess and collect those duties.

37.     Plaintiff has been, and continues to be, directly impacted by Defendants' unlawful actions related to the Executive Orders and IEEPA Duties.

38.     Since the implementation of the unlawful Executive Orders, Plaintiff imported goods primarily from China that are subject to tariffs under those orders. These goods are subject to IEEPA Duties.

39.     Plaintiff has paid, and continues to pay, IEEPA Duties unlawfully collected under the unauthorized Executive Orders.

40.     Multiple entries for which Plaintiff has paid the IEEPA Duties have already liquidated, and additional entries will continue to liquidate.

---

[8] *See* Exec. Order No. 14329 — *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38701 (August 6, 2025); Exec. Order No. 14323 — *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37739 (July 30, 2025).

41.    Plaintiff has been substantially harmed by the unlawful execution and imposition of the unauthorized Executive Orders and corresponding payment of the IEEPA Duties.

## STATEMENT OF CLAIMS

### COUNT I

### IEEPA DUTIES ARE *ULTRA VIRES* IN VIOLATION OF IEEPA

42.    Paragraphs 1 through 41 are incorporated by reference.

43.    In *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), aff'd, 149 F.4th 1312 (Fed. Cir. 2025), this Court held that the President's imposition of the IEEPA Duties was outside of his authorization under the IEEPA.

44.    In times of national emergency, the IEEPA authorizes the President to "investigate, regulate, or prohibit" certain foreign transactions. Defendants have not established the condition precedent to operating under the IEEPA – a true national emergency or extraordinary threat to national security.

45.    Even in times of true national emergency, IEEPA authorizes neither the imposition of tariffs nor duties on imports. The IEEPA does not provide the President with the authority to use their discretion to set tariff rates. This was the holding in *V.O.S. Selections, Inc.*, which was affirmed by the Federal Circuit.

46.    Congress has the constitutional authority to impose tariffs and taxes. That authority has not been delegated to the President. Defendants' attempted usurpation of this authority is not only unenforceable, but it also raises serious constitutional concerns.

47.    Plaintiff's challenges to the IEEPA Duties are virtually identical in all meaningful ways to those struck down in *V.O.S. Selections, Inc.* They are similarly devoid of the proper

authorization under the IEEPA and, if not struck down, will cause Plaintiff irreparable harm. They should therefore be declared unlawful and without past, present, or future effect.

48.    This Court has the power to enjoin Defendants' *ultra vires* acts to maintain appropriate limits on executive authority. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015); *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

49.    Plaintiff requests that this Court follow the precedent it set in *V.O.S. Selections, Inc.* and the binding precedent of the Federal Circuit, and declare the IEEPA Duties void, enjoin Defendants from imposing the IEEPA Duties, and enter an order refunding any and all IEEPA Duties collected from Plaintiff, plus interest, regardless of liquidation status.

## COUNT II

### IEEPA DUTIES ARE UNCONSTITUTIONAL

50.    Paragraphs 1 through 41 are incorporated by reference.

51.    If this Court were to find the IEEPA Duties authorized under IEEPA, such a decision would reveal IEEPA itself to be an unconstitutional delegation of power from the legislative branch to the executive branch.

52.    Only Congress has the power to set and collect duties. U.S. CONST. art. I, § 8, cl. 1. Congress cannot delegate, or abdicate, this power to the executive branch without constraint. No such constraints are present here.

53.    Thus, if the IEEPA is held to authorize the IEEPA Duties, this complete abdication of constitutional rights from Congress to the President is unconstitutional. If the IEEPA Duties continue to be imposed on Plaintiff, Plaintiff will suffer substantial and irreparable harm.

54.    Plaintiff therefore seeks a declaratory judgement that, if this Court finds the IEEPA Duties authorized under the IEEPA, the IEEPA violates Article I of the constitution and non-

delegation doctrine and the IEEPA Duties are therefore an unconstitutional exercise of power and must be enjoined. Plaintiff further requests that this Court enter an order holding any and all IEEPA Duties collected from Plaintiff must be refunded, plus interest, regardless of liquidation status.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

(1) declare that Defendants' actions resulting in IEEPA Duties are unauthorized by, and contrary to, the IEEPA and are therefore unlawful and unconstitutional;

(2) declaring that, if Defendants' actions resulting in IEEPA Duties are authorized by the IEEPA, that the IEEPA is unconstitutional;

(3) enjoin Defendants and their agents, employees, and any persons acting under Defendants' direction or control from engaging in any effort to collect or liquidate any IEEPA Duties;

(4) order Defendants to promptly refund, with interest, any IEEPA duties paid by Plaintiff regardless of liquidation status;

(6) award Plaintiff its costs and reasonable attorney fees; and

(7) grant such other and further relief as may be just and proper.


Respectfully submitted,

Dated: January 8, 2026        */s/ Ashleigh J. F. Lynn*

Ashleigh J. F. Lynn
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD, 21202
Telephone: (410) 244-7400
Fax: (410) 244-7742
AJLynn@Venable.com

*Counsel to The Glove Source, Inc.*

12

**CERTIFICATE OF SERVICE**

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on January 8, 2026, copies of Plaintiff's Summons and Complaint were served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Deputy General Counsel
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20508

Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

/s/ Ashleigh J. F. Lynn

Ashleigh J. F. Lynn